# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-23589-ELFENBEIN

**MARISABEL RUBIO**,

      Plaintiff,

v.

**FRANK BISIGNANO**,[1]
**COMMISSIONER OF SOCIAL SECURITY**,

      Defendant.

_____/

## ORDER

      **THIS CAUSE** is before the Court on Plaintiff Marisabel Rubio's ("Plaintiff") Amended Motion for Summary Judgment, ECF No. [18]. Defendant Frank Bisignano, Acting Commissioner of Social Security Administration ("Defendant"), filed a Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment with Supporting Memorandum of Law (the "Response"), ECF No. [19].[2] The Parties have not opted out of the undersigned's jurisdiction and, therefore, have consented to it. *See* ECF No. [5] at 2 ("If no party objects to Magistrate Judge jurisdiction within this timeframe, then this case will proceed in full before the undersigned Magistrate Judge for all purposes, including entering any dispositive order and final judgment."). Having reviewed the Parties' filings, the record, and the relevant law, Plaintiff's Motion for Summary Judgment, **ECF No. [18]**, is **DENIED**, Defendant's Motion for Summary Judgment,

---

[1] Frank Bisignano became the Acting Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the Defendant in this suit.

[2] The filing at ECF No. [19] is identical to the one at ECF No. [20].

CASE NO. 24-CV-23589-ELFENBEIN

**ECF No. [19]**, is **GRANTED,** and the Administrative Law Judge's Decision ("ALJ's Decision") is **AFFIRMED**.

## I.     BACKGROUND

On April 23, 2021, Plaintiff applied for disability insurance benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, alleging disability based on (1) "mental health problems," (2) "digestive problems," and (3) "headaches."  *See* ECF No. [7] at 70.[3]  The Social Security Administration ("SSA") initially denied Plaintiff's disability application, and again upon reconsideration.  *See id.* at 69-90.  Thereafter, Plaintiff requested a hearing, which an Administrative Law Judge ("ALJ") held on April 14, 2023.  *See id.* at 39-89, 110.  The ALJ issued an unfavorable decision on June 27, 2023, finding Plaintiff not disabled.  *See id.* at 23-33.  The Appeals Council denied Plaintiff's request for review on June 22, 2024, thus making the ALJ's decision final.  *See id.* at 5-10.

## II.    LEGAL STANDARDS

### A.     <u>Judicial Review of Claims under the Act</u>

A court's review of an ALJ's decision is limited to assessing whether there is substantial evidence in the record to support the ALJ's findings and whether the ALJ applied the correct legal standards in reaching his or her determination.  *See Biestek v. Berryhill*, 587 U.S. 97, 104 (2019).  Moreover, the Court will affirm an ALJ's decision so long as substantial evidence supports it.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) ("If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." (quotation marks omitted)).

---

[3] The references to page numbers from the record refer to the CM-ECF page numbers.

The standard for substantial evidence requires more than a mere scintilla and necessitates relevant evidence that a reasonable person would accept as sufficient to uphold a conclusion. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (finding that substantial evidence is "more than a scintilla, but less than a preponderance"). Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). Even if the evidence leans against the ALJ's decision, the court must uphold it if substantial evidence supports it. *See See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) ("If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." (citation omitted)); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)).

## B.   <u>Regulatory Framework for Weighing Medical Opinions</u>

Social Security regulations require the ALJ to consider and evaluate all evidence, including medical opinions. 20 C.F.R. § 404.1513(a). Medical opinions are statements "from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions" in her ability to "perform physical demands of work activities"; "perform mental demands of work activities"; "perform other demands of work, such as seeing, hearing, or using other senses"; and "adapt to environmental conditions, such as temperature extremes or fumes." *Id.* § 404.1513(a)(2). Relevant here, "mental demands of work activities" means "understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." *Id.* § 404.1513(a)(2)(ii).

When evaluating "medical opinions and prior administrative medical findings," the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from" a claimant's "medical sources," *id.* § 404.1520c(a), but she "will articulate in" her "determination or decision how persuasive" she finds "all of the medical opinions and all of the prior administrative medical findings in" the claimant's "case record," *id.* § 404.1520c(b). In doing so, the ALJ primarily considers four factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant[4]; and (4) specialization. *Id.* § 404.1520c(c)(1)–(4); *see also Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 897 (11th Cir. 2022) (Section 404.1520c(c) "provides several factors for determining what weight to give a claimant's proffered medical opinions. Those factors include the supportability of the medical opinion, its consistency with other record evidence, the physician's relationship with the claimant, [and] the physician's specialty."). The ALJ also considers "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of" the SSA's "disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(5); *see also Harner*, 38 F.4th at 897 (noting the ALJ considers "other relevant information, such as the physician's familiarity with the other record evidence and with making a claim for disability").

---

[4] The relationship with the claimant factor "combines consideration of" the "length of time a medical source has treated" the claimant and the "frequency" of visits, both of which "may help demonstrate whether the medical source has a longitudinal understanding of" the impairments. *See* 20 C.F.R. § 404.1520c(c)(3). This factor also considers the "purpose for treatment" and the "kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories," both of which "may help demonstrate the level of knowledge the medical source has of" the impairments. *Id.* § 404.1520c(c)(3). Finally, this factor considers whether the medical source has examined the claimant, which may give the medical source "a better understanding of" the impairments "than if the medical source only reviews evidence in" the claimant's "folder." *Id.* § 404.1520c(c)(3).

Of these factors, supportability and consistency "are the most important" when determining the persuasiveness of a "medical source's medical opinions or prior administrative medical findings." *Id.* § 404.1520c(b)(2).  Supportability refers to how relevant "the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)" — the "more relevant" they are, the "more persuasive" they will be.  *Id.* § 404.1520c(c)(1).  Consistency refers to how consistent "a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim" — the "more consistent" they are, the "more persuasive" they will be.  *Id.* § 404.1520c(c)(2).  Because they are the most important factors, the ALJ "will explain how" she "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in" her "determination or decision."  *Id.* § 404.1520c(b)(2).  And the ALJ "may, but [is] not required to, explain how" she considered the other factors.  *See id.*; *Gary-Lowe v. O'Malley*, No. 22-CV-22379-JB, 2024 WL 1178658, at \*5 (S.D. Fla. Feb. 12, 2024).  "The ALJ need not discuss every piece of evidence if the ALJ's decision is not a broad rejection and there is enough for us to conclude that the ALJ considered the claimant's medical condition as a whole."  *Raper v. Commr. of Soc. Sec.*, 89 F.4th 1261, 1277 (11th Cir. 2024), *cert. denied sub nom.* 145 S. Ct. 984 (2024) (citing *Dyer*, 395 F.3d at 1210; *Jamison v. Bowen*, 814 F.2d 585, 590 (11th Cir. 1987)).

### C.   The SSA's Sequential Evaluation for Disability Claims

To be eligible for DIB, a claimant must meet the disability criteria outlined in the Act. *See* 42 U.S.C. § 423(a)(1)(E), (d).  Claimants over the age of 18 are "considered to be disabled" if they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than twelve months." *See id.*
§ 1382c(a)(3)(A).  When determining a claimant's eligibility for DIB, the ALJ employs a "five-step sequential evaluation." *See* 20 C.F.R. § 404.1520(a)(4).  If the ALJ "can find that" a claimant is "disabled or not disabled at a step," she makes her "determination or decision and" does "not go on to the next step." *See id.*  But if the ALJ "cannot find that" a claimant is "disabled or not disabled at a step," she goes "on to the next step." *See id.*

At the ***first step***, the ALJ considers a claimant's "work activity, if any." *Id.*
§ 404.1520(a)(4)(i).  If the claimant is "doing substantial gainful activity," the ALJ will find the claimant is "not disabled." *Id.*; *see also id.* § 404.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.").

If the claimant is not engaged in substantial gainful activity, then the ALJ must go on to step two. At the ***second step***, the ALJ considers "the medical severity" of a claimant's "impairment(s)." *Id.* § 404.1520(a)(4)(ii).  An "impairment or combination of impairments" is severe if it "significantly limits" a claimant's "physical or mental ability to do basic work activities." *See id.* § 404.1520(c).  When making this determination, the ALJ does not consider a claimant's "age, education, and work experience." *Id.*  If a claimant does not have "a severe medically determinable physical or mental impairment" or "combination of impairments" that either "is expected to result in death" or has lasted or is "expected to last for a continuous period of at least 12 months," the ALJ will find the claimant is "not disabled." *See id.*
§ 404.1520(a)(4)(ii); *id.* § 404.1509 (labelling the requirement that an impairment be expected to result in death or have lasted/be expected to last for a continuous period of at least 12 months the "duration requirement").  "However, it is possible for" a claimant "to have a period of disability

6

for a time in the past even" if she does not "have a severe impairment" at the time of the ALJ's evaluation. *See id.* § 404.1520(c).

If the ALJ concludes that a claimant has a severe impairment, then the ALJ moves on to step three. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004), *superseded on other grounds by* 20 C.F.R. § 404.1520c. At the ***third step***, the ALJ again considers the medical severity of a claimant's impairments. *See* 20 C.F.R. § 404.1520(a)(4)(iii). This time, the ALJ evaluates whether a claimant's severe impairment "meets or equals" an impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.*; *Phillips*, 357 F.3d at 1238. If a claimant has "an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)," the ALJ will find the claimant "disabled without considering" her "age, education, and work experience." *See* 20 C.F.R. § 404.1520(d). As the Eleventh Circuit and the Supreme Court have explained, "the idea is that the listings 'streamline the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background.'" *Phillips*, 357 F.3d at 1238 (alteration adopted, quoting *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)).

If a claimant's impairment does not meet or equal an impairment listed in Appendix 1, then the ALJ moves on to step four. *See* 20 C.F.R. § 404.1520(e). At the ***fourth step***, the ALJ "will assess and make a finding about" the claimant's "residual functional capacity" ("RFC") "based on all the relevant medical and other evidence in" the claimant's "case record." *Id.*; *see also id.* § 404.1520(a)(4)(iv). A claimant's RFC "is the most" the claimant "can still do" in a "work setting . . . despite" the "physical and mental limitations" caused by the claimant's "impairment(s), and any related symptoms, such as pain."[5] *See* 20 C.F.R. § 404.1545(a)(1). The ALJ uses the RFC

---

[5] In making the RFC determination, the ALJ "will consider all of" a claimant's "medically determinable impairments of which" she is "aware, including . . . medically determinable impairments that are not

assessment "to determine if" the claimant can do her "past relevant work." *See id.* § 404.1520(e). The ALJ does this by comparing the RFC assessment "with the physical and mental demands of" a claimant's "past relevant work." *See id.* § 404.1520(f). If a claimant "can still do this kind of work," the ALJ will find the claimant is "not disabled." *See id.*

If the ALJ concludes a claimant cannot do her past relevant work because she has a severe impairment, or if a claimant does "not have any past relevant work," then the ALJ moves on to step five. *See id.* §§ 404.1520(g)(1), 404.1560(c). At the ***fifth step***, the ALJ considers the claimant's RFC "together with" her "age, education, and work experience" — that is, her "vocational factors" — to "see if" she "can make an adjustment to other work." *See id.* § 404.1520(a)(4)(v), (g)(1). "At step five the burden of going forward shifts to the [Commissioner] to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quotation marks omitted). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Id.* If the claimant "can make an adjustment to other work," the ALJ will find the claimant "not

---

severe." *See* 20 C.F.R. § 404.1545(a)(2). The ALJ will also consider the "total limiting effects" of all the claimant's "impairment(s) and any related symptoms," because "[p]ain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone." *See id.* § 404.1545(e). "In general," a claimant is "responsible for providing the evidence" the ALJ "will use to make a finding about" her RFC. *See id.* § 404.1545(a)(3). But before the ALJ determines a claimant is not disabled, the ALJ is "responsible for developing" the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help" the claimant "get medical reports from" the claimant's "own medical sources." *Id.* The ALJ "will consider any statements about what" the claimant "can still do that have been provided by medical sources, whether or not they are based on formal medical examinations" and "will also consider descriptions and observations of" a claimant's "limitations from her impairments, "including limitations that result from" the claimant's "symptoms, such as pain, provided by" the claimant or her "family, neighbors, friends, or other persons." *Id.* With these details, the ALJ evaluates a claimant's "ability to meet the physical, mental, sensory, and other requirements of work." *See id.* § 404.1545(a)(4), (b)–(d) (describing how the ALJ assesses a claimant's physical, mental, and other abilities).

disabled." *See* 20 C.F.R. § 404.1520(a)(4)(v), (g)(1).  But if the claimant "cannot make an adjustment to other work," the ALJ will find the claimant is "disabled."  *See id.* § 404.1520(a)(4)(v), (g)(1).

## III.   THE ALJ'S DECISION

On June 27, 2023, ALJ Gracian A. Celaya (the "ALJ") entered an unfavorable decision, finding Plaintiff not disabled.  *See* ECF No. [7] at 28-29.  In reaching this conclusion, the ALJ employed the SSA's five-step sequential evaluation outlined above.

At ***step one***, the ALJ concluded that Plaintiff had "not engaged in substantial gainful activity since April 23, 2021, the application date[.]"  *Id.* at 25 (citation omitted).  At ***step two***, the ALJ concluded that Plaintiff has the following severe impairments: borderline intellectual functioning ("BIF"), anxiety and obsessive-compulsive disorders, and ADHD.  *Id.* (citing 20 C.F.R. § 416.920(c)).

At ***step three***, the ALJ concluded that Plaintiff's impairments, or combination thereof, failed to meet or medically equal the criteria listed in Appendix 1 of the Regulations.  *See id.* at 26.  In making this finding, the ALJ considered the listings that most closely aligned with Plaintiff's alleged impairments, which included listings 12.05 (intellectual disorder), 12.06 (anxiety and obsessive-compulsive disorders), and 12.11 (neurodevelopmental disorders).  *Id.*  In evaluating Listings 12.05, 12.06, and 12.11, the ALJ considered the "paragraph B" criteria and found only moderate limitations in each of the four broad areas of functioning.  *Id.*  Specifically, the ALJ found moderate limitations in understanding, remembering, or applying information, citing Plaintiff's reported memory issues and need for reminders but noting her ability to maintain part-time employment.  *Id.*  The ALJ also found moderate limitations in interacting with others, acknowledging Plaintiff's limited social circle but emphasizing her ability to work in a grocery

store, shop, attend church, and relate well during a consultative psychological examination with Luis Zaldivar, Ph.D. in 2014 (the "2014 Exam").  *Id*.  With respect to concentration, persistence, or pace, the ALJ credited Plaintiff's reports of difficulty focusing but again pointed to her consistent part-time work history as evidence of less than a marked limitation.  *Id*.  Finally, the ALJ found moderate limitations in adapting or managing oneself, noting Plaintiff's reported need for reminders but also her demonstrated ability to perform personal care.  *Id*. at 27.  Because Plaintiff did not have at least two marked limitations or one extreme limitation, the paragraph B criteria were not satisfied.  *Id*.  The ALJ also determined that the "paragraph C" criteria were not met, as the record did not show a serious and persistent mental disorder with ongoing treatment and marginal adjustment.  *Id*.

In assessing Listing 12.05 (intellectual disorder), the ALJ found that the requirements of either paragraph A or paragraph B were not met.  *Id*.  Paragraph A was not met because Plaintiff had a full-scale IQ score of 92 at age 18, which is within the average range, and she was able to perform personal care independently.  *Id*. at 28.  Paragraph B was not met for these reasons because Plaintiff did not demonstrate the required marked or extreme deficits in adaptive functioning.  *Id*.

Because Plaintiff's impairments did not meet or equal any of the Listings in Appendix 1 of the Regulations, the ALJ proceeded to ***step four*** of the SSA's five-step sequential analysis and found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with a few nonexertional limitations.  *Id*.  Specifically, the ALJ found that Plaintiff could never climb ladders, ropes, or scaffolds, and could not work at unprotected heights or around hazards.  *Id*.  The ALJ also found that Plaintiff can follow simple instructions, frequently interact with coworkers, supervisors, and the public, and concentrate in two-hour increments without a break.  *Id*.  In making these findings, the ALJ considered all of

Plaintiff's alleged impairments against the medical evidence before her. *Id*. at 28-29. The ALJ acknowledged that Plaintiff's medically determinable impairments — BIF, anxiety, obsessive-compulsive disorder, and ADHD — could reasonably cause her alleged symptoms. *Id*. at 29. The ALJ found, however, that Plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were inconsistent with the overall record. *Id*.

First, the ALJ's RFC analysis considered Plaintiff's employment history and activities of daily living. *See id*. The ALJ emphasized Plaintiff's part-time work as a grocery store bagger and front service clerk, which required significant interaction with the public and coworkers, as well as evidence that she was talkative, relatable, and able to sustain attention and concentration within the average range during the 2014 Exam with Dr. Zaldivar. *See id*. During the 2014 Exam, Plaintiff also reported performing daily living activities such as cooking, cleaning, managing simple finances, and socializing appropriately. *See id*. at 29-30. The ALJ highlighted discrepancies in Plaintiff's account of why she left school, noting evidence that her departure was due to family circumstances rather than functional limitations. *See id*. at 30.

In evaluating the medical opinions, the ALJ found the assessments of the State Agency psychological consultants, Drs. Theodore Weber, M.Div., Psy.D. and Kathryn P. Bell, Ph.D., persuasive, as they concluded Plaintiff had severe impairments but only moderate limitations across mental functioning domains. *See id*. Similarly, the ALJ determined that the opinions from the State Agency medical consultants, Drs. Charles E. Moore, M.D. and Cristina Rodriguez, M.D., finding no exertional limitations, were persuasive and consistent with the record. *Id*. The ALJ gave persuasive weight to Dr. Zaldivar's 2014 Exam, which yielded a full-scale IQ score of 92, but discounted Dr. Zaldivar's later 2018 examination (the "2018 Exam") findings of BIF because they were inconsistent with the 2014 Exam results and there were no intervening events. *See id*.

at 30-31.  The ALJ did not assign consultative examiner John Catano, M.D.'s opinion persuasive value because it lacked vocational specificity; but still applied Dr. Catano's clinical findings "to the extent consistent with the overall record."  *See id.* at 31.  Finally, the ALJ rejected Erika Martinez, Psy.D.'s 2017 neuropsychological evaluation that suggested profound impairment as inconsistent with Plaintiff's presentation and other medical evidence.  *Id.*  Based on the totality of the evidence, the ALJ concluded that Plaintiff's RFC was consistent with the above restrictions.[6] *Id.*

Considering Plaintiff's RFC limitations did not preclude all employment, the ALJ proceeded to ***step five*** of the SSA's five-step sequential analysis.  *See id.*  Under this step, the ALJ found that Plaintiff had no past relevant work and, at the time of her application, was a younger individual with a limited education.  *See id.*  Because she had no past relevant work, transferability of job skills was not at issue.  *See id.*  Relying on the testimony of a vocational expert, the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including hand packager, stores laborer, and label coder.  *See id.* at 32.  The ALJ confirmed that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles and concluded that Plaintiff could make a successful adjustment to other work.  *See id.*  Accordingly, applying the Medical-Vocational Guidelines as a framework, the ALJ found Plaintiff "not disabled."  *See id.*

---

[6] Of note, the record contains 25 medical exhibits (Exhibit B1F to B25F) consisting of medical reports from 2013 to 2023.  *See* ECF No. [7] at 3-4.  The ALJ only discusses the medical reports of the State agency consultants and four consultative examinations, two being Dr. Zaldivar's 2014 and 2018 Exams, Dr. Martinez's 2017 neuropsychological evaluation, and Dr. Catano's physical limitations exam.  *See* ECF No. [7] at 26-31.

## IV.     DISCUSSION

Plaintiff's Motion for Summary Judgment presents three arguments.  *See* ECF No. [18] at 1.  Two of them contend that substantial evidence does not support the the ALJ's findings — specifically, the determination that Dr. Martinez's opinion was "not persuasive" and the assessment of Plaintiff's mental RFC limitations.  *See id.*  The third argument asserts that the ALJ failed to properly evaluate Plaintiff's subjective complaints.  *See id.*  The Court addresses each in turn.

### A.  <u>The ALJ's Assessment of Dr. Martinez's Neuropsychological Examination</u>

Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Martinez, who conducted a neuropsychological evaluation using 17 tests and found Plaintiff to have significant cognitive and adaptive deficits.  *See* ECF No. [18] at 5.  Plaintiff argues that the ALJ's rejection of Dr. Martinez's opinion is legally deficient because the ALJ failed to address the required supportability factor and relied only on conclusory findings about consistency, which are inadequate under the regulations and warrant remand.  *See id.*  Dr. Martinez diagnosed intellectual disability and major depressive disorder, concluded Plaintiff was not capable of competitive employment, and identified significant limitations in memory, concentration, learning, and daily functioning.  *See* ECF No. [7] at 1091-1099.  Plaintiff contends that if credited, this opinion would preclude all work.  *See id.*

Defendant's opening contention is that Plaintiff's argument fails at the threshold because Dr. Martinez's 2017 opinion precedes the relevant SSI period by four years.  *See* ECF No. [19] at 4-5.  Defendant argues that, under Eleventh Circuit precedent, medical opinions predating the relevant period are of limited value and need not be addressed, especially where later evidence — such as Plaintiff's part-time work — contradict it.  *See id.* (citing *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999); *Alvarez v. Comm'r of Soc. Sec.*, 848 F. App'x 823, 825 (11th Cir. 2021);

*Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 856-57 (11th Cir. 2018)).  Defendant argues that, regardless, the ALJ considered Dr. Martinez's opinion and properly found it unpersuasive. *See id*. at 6.  The ALJ explained that the opinion was inconsistent with the overall record and Plaintiff's presentation at prior assessments and the hearing, and she noted Dr. Martinez's extreme finding that Plaintiff functioned like a 5 to 6-year-old child.  *See id*. at 7.  Defendant argues this explanation addressed both supportability and consistency.  *See id*.

Starting with Defendant's argument that the ALJ need not have considered Dr. Martinez's 2017 opinion because it predated the relevant SSI period, the Court disagrees.  Although Defendant argues that the only relevant period is the one between the application date (April 23, 2021) and the date of the ALJ's decision (June 27, 2023), that is not the relevant timeframe.  Rather, the relevant period typically commences on the date of the alleged disability onset.  *See Coats v. Kijakazi*, No. 21-CV-01762-AEP, 2023 WL 2706857, at *10 (M.D. Fla. Mar. 30, 2023) ("The burden was on Plaintiff to establish his entitlement to benefits during the specific time period between the alleged onset date and the date last insured." (citing *Cassidy v. Comm'r of Soc. Sec. Admin.,* 383 F. App'x 840, 842 (11th Cir. 2010)); *Broome v. O'Malley*, No. 23-CV-650-GMB, 2024 WL 2194462, at *4 (N.D. Ala. May 15, 2024) (explaining that evidence predating the claimant's alleged onset date or post-dating the claimant's insured status is "only marginally relevant").  Further, even "[e]vidence from before a claimant's onset date can be relevant when it is probative of the plaintiff's limitations during the relevant time period."  *Holcomb v. Comm'r of Soc. Sec.*, No. 22-CV-01619-JHE, 2024 WL 1181467, at *6 (N.D. Ala. Mar. 19, 2024) (citing *Douglas v. Comm'r of Soc. Sec.*, 486 F. App'x 72, 75 (11th Cir. 2012)).

Here, Plaintiff alleges her disability began on June 1, 2013, *see* ECF No. [7] at 23, but she filed her SSI application in April 2021, making benefits payable no earlier than the month

following the application, *see* 20 C.F.R. § 416.335.  Dr. Martinez's medical records, though they predate her April 2021 SSI application, are within the relevant time period as they document Plaintiff's medical condition in 2017 — after the alleged onset date.   Under 20 C.F.R. §§ 416.912(b), 416.945(a)(3), and *Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017) ("SSR 16-3p"), the ALJ was obligated to consider the complete, relevant medical history to evaluate whether Plaintiff was disabled during the SSI period.

Defendant relies on various cases to argue the ALJ was not required to consider Dr. Martinez's report because it was not within the relevant timeframe.  These cases, however, do not support Defendant's position.  Starting with *Wilson*, 179 F.3d at 1279, and *Alvarez*, 848 F. App'x at 825, the medical evidence at issue in these cases was deemed irrelevant because it post-dated the ALJ's decision or post-dated the adjudicatory period.  Nor is this case akin to *Santos*, where the opinions at issue predated the alleged onset date and thus had little bearing on the claimant's functional capacity.   731 F. App'x at 856-57.   Similarly, Defendant cites to *Coats* for the proposition that "'pre-onset date medical opinions are inherently of limited relevance to the question of disability during' the relevant period" without recognizing that Dr. Martinez's opinions are not "pre-onset" medical opinions but are instead post-onset and are, therefore, within the relevant period.  2023 WL 2706857, at *10.  Because Dr. Martinez's opinions are part of the relevant medical evidence the ALJ must consider in making her RFC assessment, the ALJ was required to consider them.

Turning next to the ALJ's analysis of Dr. Martinez's opinions, the Court agrees with Plaintiff that the ALJ failed to analyze the supportability factor but finds that the ALJ sufficiently articulated the consistency factor.  Regarding Dr. Martinez's opinions, the ALJ stated:

> The opinions expressed in the Neuropsychological Evaluation, performed on February 28, 2017, are not persuasive (Exhibit B22F). The findings in this assessment are markedly at odds with the prior assessments and the overall record. The assessment indicates the claimant is profoundly impaired and has the cognitive capacity of a 5 to 6-year old, which is not only inconsistent with the record as a whole but with the claimant's clinical presentation at prior assessments and at the hearing.

*See* ECF No. [7] at 31.

To recap, an ALJ must evaluate the persuasiveness of medical opinions by addressing the two "most important" factors — supportability and consistency — and must articulate how those factors were considered. 20 C.F.R. § 404.1520c(b)(2), (c)(1)–(2). Under *Winschel*, 631 F.3d at 1178, an ALJ must provide enough clarity to permit meaningful review. Further, the Eleventh Circuit states that the ALJ's "failure . . . to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal" in its own right. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019) (quoting *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). The "supportability" factor requires the ALJ to analyze "the extent to which a medical source has articulated support for the medical source's own opinion," while the "consistency" factor requires the ALJ to consider "the relationship between a medical source's opinion and other evidence within the record." *Rodriguez v. Comm'r of Soc. Sec.*, No. 20-CV-1674, 2022 WL 807443, at *5 (M.D. Fla. Mar. 17, 2022) (citing 20 C.F.R. §§ 404.1520c(c)(1)-(2)). After carefully reviewing the ALJ's decision and the record in this case, the Court finds that the ALJ failed to apply the supportability factor while sufficiently applying the consistency factor.

Starting with the supportability factor, the Court finds that the ALJ did not meaningfully engage with the contents of Dr. Martinez's report. Dr. Martinez conducted a detailed neuropsychological evaluation where she administered seventeen instruments (including Spanish-

normed Woodcock-Muñoz cognitive and achievement batteries, ABAS-3 (Spanish), Trail Making, Stroop, Rey measures, language/visual memory, and motor tests) and documented numerous standardized scores and percentiles (*e.g.*, working memory and processing efficiency; broad academic fluency). *See* ECF No. [7] at 1091–99; ECF No. [7-1] at 1-4. She also included adaptive-functioning findings and explained that observed fluctuations in attention and motivation were interpreted as representative of current functioning. *See id*. at 1092, 1094–95. Based on this data, she opined that Plaintiff's functional limits include the need for one-step instructions, slowed learning, cueing, reduced work tolerance, and social/interpersonal restrictions, and concluded that Plaintiff was not ready for competitive employment. *See id*. at 1091–95.

The ALJ's rationale does not address the supporting bases of Dr. Martinez's conclusions, including the specific test results and explanatory rationale. *See* 20 C.F.R. § 404.1520c(c)(1). Instead, the ALJ deemed Dr. Martinez's opinion "not persuasive," because it indicates Plaintiff "is profoundly impaired and has the cognitive capacity of a 5 to 6-year-old," which the ALJ found inconsistent with Plaintiff's clinical presentation at prior assessments and at the hearing. *See* ECF No. [7] at 31. The absence of any discussion as to whether Dr. Martinez has articulated support for her own opinion leaves the Court unable to determine whether the ALJ actually considered the supportability factor as required. A reasonable mind could accept a rejection if the ALJ confronted those bases and explained why they were unreliable or poorly supported; that did not occur here. The omission prevents meaningful review of whether the ALJ actually considered this factor. *See* 20 C.F.R. § 404.1520c(b)(2).

However, as to the consistency factor, the Court finds that the ALJ's analysis sufficiently identifies contrary evidence when stating that Dr. Martinez's findings were "markedly at odds with the prior assessments and the overall record" and when explaining that Dr. Martinez's conclusion

of profound cognitive impairment is inconsistent "with the record as a whole," with Plaintiff's "clinical presentation at prior assessments," and with her presentation "at the hearing." *See* ECF No. [7] at 31. As Defendant points out, the ALJ's decision leading up to her discussion of Dr. Martinez's finding lays out the specific inconsistencies. For example, as compared with Dr. Martinez's finding that Plaintiff "is profoundly impaired" and has the cognitive abilities of a five or six-year-old child, the ALJ pointed out that Dr. Weber and Dr. Bell "concluded that [Plaintiff] has moderate limitations in all domains of mental functioning" and that Dr. Zaldivar administered objective IQ testing, which "is [a] generally reliable indicator of an individual's cognitive capacities," and found that her IQ was a 92. *Id.* at 30. The ALJ also noted that in the 2014 Exam with Dr. Zaldivar, Plaintiff was "able to handle her own funds and simple finances" and perform other activities of daily living, which are not consistent with a profound impairment. *Id.*

While the ALJ's discussion about the weight she assigned to Dr. Martinez's opinions did not provide specific examples of the inconsistencies between his opinions and other evidence, the ALJ's decision did explain *why* the opinions were inconsistent (because the findings of profound cognitive impairment were not consistent with the record, her prior assessments, and her presentation at the hearing) and the decision itself discusses those inconsistencies, as explained above, in the paragraphs immediately preceding her discussion about Dr. Martinez's findings. *See Garcia v. Kijakazi*, No. 21-22879-CV, 2023 WL 1820984, at *8 (S.D. Fla. Jan. 9, 2023), *report and recommendation adopted*, No. 21-CV-22879, 2023 WL 1816387 (S.D. Fla. Feb. 8, 2023), *aff'd sub nom. Garcia v. Comm'r, Soc. Sec. Admin.*, No. 23-CV-11184, 2023 WL 7404856 (11th Cir. Nov. 9, 2023) (explaining that even though the ALJ failed "to provide specific examples to support his inconsistency finding, the ALJ did in fact explain why [the doctor's] opinion was inconsistent with her treatment notes (because the notes reflect improvement with treatment) and

why it was inconsistent with the mental status exams (because the mental status reports contained largely unremarkable findings).").  Thus, the Court finds that the ALJ sufficiently addressed the consistency factor as it relates to Dr. Martinez's opinions.

The Court must next determine whether the ALJ's failure to address the supportability factor requires a remand for further development of the factual record.  "Remand is unwarranted unless an error creates fundamental unfairness or prejudice." *Raper*, 89 F.4th at 1274 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (describing the ALJ's errors as "harmless" because they were "irrelevant" to the ALJ's analysis of the relevant factors)).  An improper finding can "be harmless if the ALJ nevertheless proceeded in the sequential evaluation, duly considered [the claimant's] mental impairment when assessing his RFC, and reached conclusions about [the claimant's] mental capabilities supported by substantial evidence." *Schink*, 935 F.3d at 1268.  Here, remand is not warranted because any error was harmless.  Even if Dr. Martinez's opinion was fully credited, it would not compel a finding of disability.  *See Dennis N. v. Bisignano*, No. 24-CV-828-RAH-KFP, 2025 WL 2304643, at *2 (M.D. Ala. 2025) ("To the extent the ALJ erred by neither reconciling the medical findings discrepancy nor evaluating the supportability and consistency of either medical opinion, the Court finds such error was harmless because a correct application of the regulations would not change the ALJ's ultimate finding.").  As explained below, the ALJ engaged in the five-step sequential analysis as to each of Plaintiff's impairments; evaluated the record, including treatment notes, medical opinions, objective test results, and Plaintiff's activities of daily living; and concluded that Plaintiff retained the outlined RFC — a conclusion that substantial evidence supports.  *See Dyer*, 395 F.3d at 1210.  Because substantial evidence supports the RFC, the ALJ's failure to properly articulate the supportability factor in discounting

Dr. Martinez's opinion did not result in prejudice or fundamental unfairness and was, therefore, harmless. *See Diorio*, 721 F.2d at 728.

**B.** **Substantial Evidence Supports The ALJ's RFC Conclusion**

As previously stated, "[w]hen considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's." *Gray v. Colvin*, No. 24-CV-018, 2025 WL 25956, at *2 (S.D. Ga. Jan. 3, 2025) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) and *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)), *report and recommendation adopted sub nom. Gray v. King*, No. 24-CV-018, 2025 WL 299794 (S.D. Ga. Jan. 24, 2025). In the decision, the ALJ found that, despite severe mental impairments, Plaintiff can perform simple work with the ability to concentrate in two-hour increments without a break and to frequently interact with coworkers, supervisors, and the public. *See* ECF No. [7] at 28. In rating the paragraph B domains, the ALJ assessed moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *See id*. at 26–27. To support the RFC, the ALJ relied on Plaintiff's part-time grocery work involving public and coworker contact, *see id*. at 29-30; the 2014 Exam by Dr. Zaldivar describing adequate social functioning, ability to manage simple finances, ability to follow simple instructions, average attention control and simple visual processing, and objective testing for cognitive function yielding an IQ of 92, *see id*.; and State agency reviewers, Drs. Weber and Bell, who opined that Plaintiff had no more than moderate mental limitations and the capacity for simple tasks, *see id*. at 30. The ALJ discounted more restrictive evidence — including Dr. Martinez's 2017 neuropsychological opinion and Dr.

Zaldivar' 2018 Exam — as "not persuasive" and inconsistent with the record as a whole.  *See id*. at 31.

Overall, the ALJ's review of the evidence shows that substantial evidence supported the decision.  While Plaintiff argued that the ALJ should have considered other pieces of evidence in the record, the ALJ is not required to discuss every piece of evidence so long as the Court is able to conduct meaningful judicial review.  *Gray*, 2025 WL 25956, at \*6 (citation omitted); *see Dyer*, 395 F.3d at 1211 ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, as was not the case here, is not a broad rejection which is not enough to enable the district court or this Court to conclude that the ALJ considered her medical condition as a whole" (cleaned up)); 20 C.F.R. § 404.1520c(b)(1) ("Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record.").  And "[w]hile one could credit the evidence differently to justify adding further limitations in the RFC, that is not the province of the Court." *Gray*, 2025 WL 25956, at \*7.  Rather, the "Court's job is . . . to review the record for substantial evidence to support the Commissioner's factual findings, and if so found, uphold the Commissioner even if the evidence preponderates in favor of the claimant."  *Id.*

## C.  <u>The ALJ's Discounting of Plaintiff's Testimony</u>

Plaintiff's final argument is that the ALJ's finding that her statements concerning her symptoms are "not fully consistent" with the record cannot be sustained.  *See* ECF No. [18] at 19. Plaintiff argues that in making her finding, the ALJ relied on a mischaracterized work history and selective evidence.  *See id*.  Plaintiff asserts that she works only two days per week, about 10 hours

per day, in a sheltered bagger role, cannot run a register, needs a coworker to locate items, and she does not perform "front service clerk" duties. *See id*. (citing ECF No. [7] at 46–47, 51, 57). According to Plaintiff, such supported, part-time work does not show capacity for full-time competitive employment. Plaintiff also argues that the ALJ leaned heavily on Dr. Zaldivar's 2014 Exam about activities of daily life and finances, *see* ECF No. [7] at 29-30, while overlooking Dr. Zaldivar's 2018 findings of concentration and retention problems, substandard intellectual capacity, and inability to handle finances, *see id*. at 30, 386–87. In any event, Plaintiff argues that simple activities of daily life do not equate to sustained work capacity. *See* ECF No. [18] at 20. Finally, Plaintiff argues that the ALJ made prohibited character-based credibility judgments by highlighting a discrepancy about why Plaintiff left high school. *See id*.

Defendant, in turn, argues the ALJ's symptom evaluation was proper and supported by substantial evidence. Citing § 404.1529 and SSR 16-3p, Defendant notes the ALJ could rely on Plaintiff's part-time grocery work to infer capacity for simple work, frequent interaction, and attention in two-hour increments, *see* ECF No. [19] at 14-15, and that sub-substantially gainful activity may still indicate an ability to work, *see id*. Defendant also points to Dr. Zaldivar's 2014 and 2018 Exams as showing intact activities of daily life and largely normal findings supporting the RFC. *See id*. Finally, it argues that the ALJ permissibly noted inconsistencies about why Plaintiff left school — not to attack character, but as allowed under § 416.929(c)(4). *See id*. Defendant therefore urges rejection of Plaintiff's third claim.

Under SSR 16-3p and 20 C.F.R. § 416.929, the ALJ must (1) determine whether medically determinable impairments could reasonably produce the alleged symptoms and, if so, (2) evaluate the intensity, persistence, and limiting effects of those symptoms against the whole record. The ALJ must clearly articulate explicit and adequate reasons for discrediting Plaintiff's symptom

allegations, and the Court affirms if substantial evidence supports those reasons — "such relevant evidence as a reasonable mind might accept as adequate." *See Dyer*, 395 F.3d at 1210; *Winschel*, 631 F.3d at 1178; *Schink*, 935 F.3d at 1257.  So long as substantial evidence supports the ALJ's decision and the ALJ clearly articulated the reasons for the credibility determination, then the ALJ did not err. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807–08 (11th Cir. 2013).  In making this determination, however, the Court cannot reweigh the record evidence. *See Burke v. Kijakazi*, No. 22-CV-389-LCB, 2023 WL 5103134, at *3 (N.D. Ala. Aug. 9, 2023).

To recap, Plaintiff alleged being disabled due to ADHD, intellectual disability, anxiety disorder, digestive problems, and extreme headaches. *Id.* at 29.  The Court finds that the ALJ here did not err when she assessed Plaintiff's testimony regarding the intensity, persistence, and limiting effects of those symptoms as "not entirely consistent" with the medical evidence and other evidence in the record.  Specifically, the ALJ explained that she did not find Plaintiff's testimony to be entirely consistent for multiple reasons: (1) Plaintiff has worked on a part-time basis and that job "includes a great deal of public and co-worker interaction;" (2) in the 2014 Exam, Dr. Zaldivar noted that Plaintiff handled her own funds and simple finances, performed a wide array of activities of daily living, was able to "concentrate well, remember to do 'important things,'" "hold simple conversations, and behave in a socially appropriate manner," and she had the "ability to sustain attention, concentration, and exert mental control [] in the average range;" and (3) contrary to her testimony that she ceased attending school because she became frustrated too easily, Plaintiff told Dr. Zaldivar that she left school before graduation for reasons unrelated to any mental limitations, which Plaintiff's mother also corroborated. *Id.* at 29-30.  Having clearly articulated these reasons for her credibility finding and relying on substantial evidence for that determination, the ALJ did not err in her finding that Plaintiff's testimony was not entirely consistent with the record.

CASE NO. 24-CV-23589-ELFENBEIN

By pointing to evidence the ALJ did not consider when evaluating Plaintiff's testimony, such as Dr. Zaldivar's 2018 report, and challenging the ALJ's reliance on her part-time employment, Plaintiff is asking the Court to reweigh the evidence (and consider the 2018 Exam) to conclude that the ALJ's finding was not supported. The Court declines to do so as it would be contrary to its role on appeal. And even if Plaintiff worked in a sheltered job, as she argues, the fact remains that her testimony supports her capacity to perform simple work with social interactions and concentration during two-hour increments and, as the ALJ pointed out, that evidence (in addition to other evidence the ALJ articulated) is "not entirely consistent" with her testimony regarding the intensity, persistence, and limiting effects of her symptoms.

Finally, contrary to Plaintiff's argument that the ALJ attempted to discredit her credibility by pointing out an inconsistency as to why she ceased attending school, the Court agrees with Defendant that the ALJ may and did properly consider inconsistencies in the evidence and conflicts between Plaintiff's statements and the rest of the evidence about how her symptoms affect her. Here, the ALJ simply pointed out that, contrary to her testimony that she ceased attending school due to frequent frustrations (implying cognitive problems), Plaintiff and her mother told Dr. Zaldivar that she ceased attending school for reasons unrelated to any mental limitations.

For these reasons, the Court finds the ALJ did not err as substantial evidence supports her decision, and the ALJ clearly articulated the reasons for her credibility determination. *See Cooper*, 521 F. App'x at 807–08.

## V.     CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment, ECF No. [18], is **DENIED**, Defendant's Motion for Summary Judgment, **ECF No. [19]**, is **GRANTED**, and the

CASE NO. 24-CV-23589-ELFENBEIN

ALJ's Decision is **AFFIRMED**. The Clerk of Court is directed to **CLOSE** this case.  All pending

motions are **DENIED AS MOOT**.

> **DONE and ORDERED** in Chambers, in Miami, Florida, on September 30, 2025.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record